IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| *Plaintiff,* | § § § | SA-17-CR-00386(2)-FB |
| vs. | § § § | SA:20-CV-00732-FB |
| (2) TREMAL ROWE, | § § § | |
| *Defendant.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Petitioner Tremal Rowe's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [#347]. The motion was referred to the undersigned pursuant to 28 U.S.C. § 636 and Appendix C of the Local Rules for the Assignment of Duties to the United States Magistrates to hold an evidentiary hearing on Rowe's claim that his trial attorney rendered ineffective assistance of counsel by failing to consult with him regarding the filing of a direct appeal [#354]. The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Petitioner's Motion to Vacate based on his claim of ineffective assistance of counsel regarding the filing of his direct appeal be **DENIED**.

**I. Background**

Petitioner Tremal Rowe (hereinafter "Rowe") was indicted on May 17, 2017, on one count of conspiracy to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1)/(b)(1)(A) and 846. (Orig. Indictment [#19].) The indictment was the result of an investigation of Rowe and others using Title III wire intercepts regarding a kidnapping as retaliation for the failure to

1

pay a drug debt. The FBI agents and SAPD Officers moved to protect the kidnapping victim and arrested Rowe and others and charged them with conspiracy to possess and distribute 280 grams or more of cocaine base. (Compl. [#1].) Rowe and his co-Defendants were named in a superseding indictment dated September 20, 2017, which contained the same single count against Rowe, conspiracy to distribute 280 grams or more of cocaine base (Count 1). (Superseding Indictment [#53], at 1.)

The District Court appointed David E. Dilley, Jr., to represent Rowe in his criminal case on June 15, 2018. (Order Appointing Counsel [#171].) On December 13, 2018, Rowe executed a plea agreement. (Plea Agreement [#220], at 11.) On the same day, he pleaded guilty to Count One of the superseding indictment. (Minute Proceedings [#219].) In his Rule 11 plea agreement, Rowe waived his right to appeal and to contest his sentence in any postconviction proceeding, except that Rowe did not waive the right to challenge his sentence on the grounds of ineffective assistance or prosecutorial misconduct "of a constitutional dimension." (Plea Agmt., [#220] at 7–8.) At the plea hearing, Rowe stated in open Court that he understood his plea agreement and understood the rights he was giving up in exchange for the agreement. (Plea Tr. [#350], at 5.)[1]

The Presentence Investigation Report ("PSR") that Probation submitted reflects that the minimum term of imprisonment for Rowe's offense is 10 years and assessed Rowe with an adjusted total offense level of 35 and an advisory guideline range of 210 to 262 months' imprisonment. (PSI [#293], at 10–16.) In calculating the offense level, several enhancements

---

[1] Throughout Petitioner's briefing, he has argued that the admonishments provided by the District Court at his plea hearing were misleading. Although Petitioner argued at the Court's evidentiary hearing on his habeas petition that his plea was not a voluntary waiver of rights, his post-hearing briefing states that Petitioner "no longer wishes to withdraw his plea" and only wants the opportunity to file a direct appeal. (Pet. Proposed FFCL [#415], at 5).

were applied, including an enhancement of two points for using violence while facilitating the offense pursuant to U.S.S.G. § 2D1.1(b)(2).  This enhancement was based on Rowe's use of a 7.62 caliber rifle to threaten violence against the kidnapping victim and on Rowe poking the victim with the head of the rifle and punching the victim numerous times.

On July 3, 2019, the District Court sentenced Rowe to 150 months of imprisonment—in other words, five years less than the bottom of the guideline range.  (*See* Judgment [#299], at 2.)  He was also given credit for time served and sentenced to five years of supervised release and a $100 special assessment.  (*Id*.)  Dilley did not file a direct appeal on Rowe's behalf.

Rowe, proceeding *pro se*, timely filed his motion to vacate, set aside, or correct his sentence pursuant to Section 2255 on June 18, 2020.  (2255 Pet. [#347]).  In his 2255 petition, Rowe challenges the legality of his conviction and sentence based on allegations of ineffective assistance of counsel and prosecutorial misconduct.  One of the bases of Rowe's ineffective assistance claim is that Dilley either failed to consult with him about filing a direct appeal or failed to file a direct appeal despite Rowe's request that he do so.  Under penalty of perjury, Rowe claims in his petition that he spoke with Dilley in the attorney visitation holding area after his sentencing on July 3, 2019, and asked Dilley to file a notice of appeal on his behalf regarding the Court's application of the enhancement for his use of violence during the commission of the offences.  Rowe maintains that the enhancement should not have been applied because he never threatened or used violence on the victim.

The Government filed a response to the Petition, attaching the sworn affidavit of Dilley, which maintains that the last conversation he had with Rowe took place prior to sentencing and that Rowe never directed him to file an appeal.  (Resp. to 2255 Pet. [#352], Att. 1.)  In support of his affidavit testimony, Dilley submitted his personal time records corroborating his position.

(*Id*.)  Rowe filed a reply, insisting that he met with Dilley after sentencing and asked him to file the appeal and that visitor logs maintained by the United States Marshals Service ("USMS") support his version of the events at issue.  (Reply to 2255 Pet. [#353].)   The District Court obtained the USMS logs, and they document a meeting between Dilley and Rowe at 10:05 a.m. after sentencing.  (Order of Referral [#354], at Att. 1.)  In light of the conflict between Dilley's time records and the USMS visitor logs, the District Court referred Rowe's Petition to the undersigned "for the purpose of holding an evidentiary hearing and submitting a report and recommendation as to movant Rowe's claims that Dilley's ineffective assistance deprived him of an appeal that he would have otherwise taken."  (*Id.* at 2.)

Upon referral, the undersigned appointed Rowe counsel for the evidentiary hearing. (Order Appointing Counsel [#356].)  After multiple continuances at Rowe's request, the Court held a live evidentiary hearing on July 15, 2021, on the limited issue ordered by the District Court, at which Rowe, his postconviction counsel, and counsel for the Government appeared. Both Rowe and Dilley provided testimony and were subjected to cross-examination.  After the hearing, the parties each filed proposed findings of facts and conclusions of law as directed by the Court.  (Pet. Proposed FFCL [#415]; Govt. Proposed FFCL [#421].)

## II.  Witness Testimony

The undersigned summarizes the testimony from the evidentiary hearing on July 15, 2021, as follows:

### A.     Petitioner Tremal Rowe

Rowe testified that his sentencing took place sometime between 9:00 a.m. and 9:45 a.m. on July 3, 2019.[2] According to Rowe, he was unhappy with his sentence because he believed the two-point enhancement for the use of violence during the transmission of the offense should not have been applied because he did not strike the victim. Rowe testified that he signed the plea agreement in part because he believed the enhancement would not be assessed. Rowe conceded at the evidentiary hearing that Dilley objected to the prosecutor's statements about the use of violence at the sentencing hearing, but the District Court overruled the objections. According to Rowe, he met briefly with Dilley immediately after sentencing,[3] expressed his dissatisfaction with the sentence, and directed Dilley to file a notice of appeal. Rowe testified that he and Dilley locked eyes, that Dilley could tell he was distraught, and that he had a clear impression that Dilley would file the notice of appeal after their conversation.

Rowe also testified that a month or two after sentencing, he called Dilley's office multiple times to check on the status of the appeal but never spoke to Dilley. According to Rowe, Dilley's assistant told Rowe over the phone that Dilley was no longer his attorney and if he wanted to retain Dilley for further representation, there would be a fee. Rowe testified that throughout the course of Dilley's representation, he only met with Dilley five or fewer times.

### B.     Attorney David Dilley

Dilley's testimony at the evidentiary hearing establishes that it is now undisputed that Dilley met with Rowe *after* sentencing, not before, as he had indicated in his affidavit. Dilley

---

[2] The transcript of the sentencing hearing reflects that sentencing occurred from 9:27 a.m. to 9:53 a.m. (Sentencing Tr. [#351].)

[3] In his post-hearing briefing, Rowe states that he met with Dilley not immediately after sentencing but that Dilley visited Rowe in custody the day after the sentencing hearing. (Pet. Prop. FFCL [#415], at 15).

testified that he believes that his billing records, which recorded the meeting as prior to sentencing, were incorrect and that the meeting was after sentencing as Rowe testified. Dilley, however, continues to maintain that Rowe did not direct him to file an appeal during the meeting (or at any other time) and that he would have no basis for believing Rowe desired him to do so.[4]

According to Dilley, he met with Rowe approximately 16 times in this case. Dilley's time records support this assertion. (Time Records [#352-1], at 7–9.) Dilley testified that during these meetings, he reviewed the plea agreement in detail with Rowe at least three times and explained the potential benefits and consequences of the agreement on Rowe's sentence. He also explained his limited right to appeal. Dilley testified that, in accordance with Rowe's request, he objected to the sentencing enhancement during the sentencing hearing, but the objections were overruled. Dilley explained he did not believe that Rowe was dissatisfied with his sentence of 150 months, given that the sentence was below the guideline range, the statutory mandatory minimum was 120 months, and the Government had argued for 180 months. Dilley testified that neither Rowe's words nor demeanor communicated a desire to appeal, that Rowe did not appear distraught, and that the extent of their conversation was to acknowledge that they were successful in obtaining a sentence close to the ten-year mandatory minimum. Dilley maintains that during this brief meeting, they did not discuss the right to appeal at all.

Dilley also testified that Rowe had contemplated cooperating with the Government by providing information about a murder, but ultimately Rowe did not want to sign a 5K1.1 agreement to reduce his sentence. However, according to Dilley, at the sentencing hearing, he was able to approach the bench for an informal bench conference with the prosecutor and Judge

---

[4] The Court notes that Rowe's post-hearing briefing states that Dilley testified at the hearing that Rowe instructed him to file a notice of appeal. The Court has reviewed the transcript of the evidentiary hearing and finds this statement to be an inaccurate representation of the record and Dilley's testimony.

Biery, at which he requested a deviation below the guidelines and below the Government's recommended sentence based on Rowe's attempt at cooperation. (Again, even though the District Court did overrule the objection by Dilley and apply the enhancement, Rowe was nevertheless sentenced to less than his guideline range and far less than what the Government asked for.)

Regarding any other contact with Rowe after sentencing, Dilley testified that he had none. He also testified that he has a small office with only two secretaries and that he never received a message that Rowe had attempted to contact him about an appeal or any other matter. According to Dilley, he never spoke with Rowe after their brief meeting immediately following sentencing.

### III. Legal Standard

The Sixth Amendment guarantees "reasonably effective" legal assistance. *United States v. Cong Van Pham*, 722 F.3d 320, 323 (5th Cir. 2013). For ineffective assistance of counsel to warrant habeas relief, Rowe must demonstrate that Dilley made errors so serious that he "was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish that his trial counsel was constitutionally ineffective, Rowe must show (1) Dilley's performance was deficient in that it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced his defense. *Id.* at 687–88.

In his petition, Rowe argues that Dilley was constitutionally ineffective because he failed to consult with him regarding his right to a direct appeal or to file a direct appeal as directed. Through his petition, Rowe seeks the reinstatement of his time for an appeal so that he may

appeal the District Court's overruling of Rowe's objection to the application of a two-point enhancement for the use of violence during the commission of his offense at sentencing.

A failure to consult with a defendant about a direct appeal does not automatically constitute constitutionally deficient performance that satisfies the first prong of *Strickland*. *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). Counsel performs deficiently in failing to consult with a defendant about the right to an appeal only when there is reason to think either that (1) a rational defendant would want to appeal (i.e., there is a nonfrivolous basis for appeal), or (2) this particular defendant reasonably demonstrated to counsel that he was interested in appealing. *Id.*

"[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable" and has engaged in constitutionally deficient performance under *Strickland*. *Id.* at 477. Even where a defendant does not instruct counsel to file an appeal, however, counsel still has a duty to consult with the defendant about an appeal "in the vast majority of cases." *Id.* at 481. Consulting in this context means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478. The existence of a duty to consult is assessed in light of "all the information counsel knew or should have known." *Pham*, 722 F.3d at 324 (quoting *Flores-Ortega*, 528 U.S. at 480). "Whether the conviction followed a trial or a guilty plea is 'highly relevant,' although not determinative, as is whether the defendant waived his right to appeal and whether he received a sentence for which he bargained." *Id.* (quoting *Flores-Ortega*, 528 U.S. at 480).

In certain Sixth Amendment contexts, the second prong of the *Strickland* test—prejudice—is presumed. *Strickland*, 466 U.S. at 692. Prejudice is presumed, for example, "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he

otherwise would have taken." *Flores-Ortega*, 528 U.S. at 484.  The Supreme Court has clarified that "this final presumption applies even when the defendant has signed an appeal waiver." *Garza v. Idaho*, --U.S.--, 139 S. Ct. 738, 744 (2019).  Accordingly, in the context of the type of ineffective assistance alleged here, a defendant need make only one showing to establish prejudice—"that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed."  *Id.* at 747 (quoting *Flores-Ortega*, 528 U.S. at 484).  There is no requirement that a defendant show that "his hypothetical appeal might have had merit."  *Flores-Ortega*, 528 U.S. at 486.

This presumption of prejudice translates to a straightforward rule in cases in which a defendant expressly instructed counsel to file a direct appeal and those instructions were disregarded: because "counsel's deficient performance forfeit[ed] an appeal that a defendant otherwise would have taken, the defendant gets a new opportunity to appeal." *Garza*, 139 S. Ct. at 749.  However, where a defendant did not communicate a desire to appeal to counsel, the defendant must still establish both that counsel's failure to consult about an appeal was constitutionally deficient performance (because there was a non-frivolous basis of appeal) and, but for that deficient performance, "he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484.  Again, a defendant need not prove that his appeal would ultimately be meritorious, but it must at least be non-frivolous.  *Id.* at 485.

### IV.  Proposed Findings of Fact and Conclusions of Law

The Court should deny Rowe's claim of ineffective assistance of counsel based on a failure to consult regarding the filing of a direct appeal or to file a direct appeal as requested.  First, there is insufficient evidence that Rowe reasonably demonstrated to Dilley his desire to file a direct appeal after sentencing.  Rowe, as Petitioner, bears the burden of sustaining his

contentions by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980). The only evidence to support Rowe's contention that he directed Dilley to file an appeal on his behalf is his self-serving testimony to that effect. Rowe did not call any additional witnesses that could have corroborated that Rowe was distraught over his sentence, that he desired to appeal, or that he believed the appeal had been filed. Nor did he submit any call logs from the jail that could have supported his testimony that he attempted to contact Dilley to check on the status of the appeal after sentencing. After hearing the live testimony of both Rowe and Dilley, the Court finds Dilley's testimony to be more credible—that the post-sentencing meeting was brief and that Rowe at no time through his demeanor or words communicated a desire to appeal. Moreover, it appears that Rowe has abandoned his theory of his ineffective assistance claim based on Dilley's alleged failure to file an appeal as directed, as his post-hearing briefing focuses on Dilley's failure to effectively consult with him about the filing of the appeal.

Second, although the evidence establishes that Dilley failed to consult with Rowe about the filing of an appeal after sentencing, Rowe has failed to establish that Dilley's failure to do so constituted constitutionally deficient performance. Dilley testified that following the sentencing hearing, he met briefly with Rowe but that their conversation did not involve any discussion of an appeal; they only discussed that they had been successful in obtaining a sentence close to the ten-year mandatory minimum—the sentence Rowe had been hoping for. Although in the course of plea negotiations, Dilley had discussed with Rowe the advantages and disadvantages of signing the Government's plea agreement and the resulting waiver of appeal rights, Dilley admits he did not specifically ask Rowe about his wishes as to the filing of a direct appeal during their meeting immediately after sentencing.

Nonetheless, there is no evidence that a rational defendant would have wanted to appeal Rowe's sentence or that Rowe had a non-frivolous basis for an appeal. *See Flores-Ortega*, 528 U.S. 480. Rowe has abandoned his argument that his plea agreement was involuntary based on his alleged lack of understanding of the rights he relinquished by signing the agreement, including the right to contest his sentence. Accordingly, insofar as Rowe desires to appeal the District Court's overruling of his objection to the two-point enhancement for the use of violence, Rowe has waived his right to advance this argument on appeal. *See Pham*, 722 F.3d at 324 ("whether defendant waived his right to appeal and whether he received a sentence for which he bargained" is highly relevant to the *Strickland* analysis).

And although Rowe's ineffective assistance of counsel claim is based on an alleged failure by Dilley to argue against the application of the two-point enhancement at sentencing, Rowe testified at the Court's evidentiary hearing that Dilley *did* object to the enhancement, but the objection was overruled. Furthermore, Dilley attached to his affidavit his 13-page objections to the PSR, which argued against the factual basis that would have supported the application of the enhancement at issue prior to sentencing as well. (Objections to PSR [#352-1], at 17.) Any assertion by Rowe that Dilley failed to object to the application of the enhancement is directly contradicted by his own testimony and the record before the Court. Finally, Rowe received a sentence well below the guideline range and close to Rowe's desired sentence, the mandatory minimum of 120 months, and his sentence is presumptively valid. Rowe has not demonstrated that a rational defendant in his position would have wanted to appeal or that there was a non-frivolous basis for a direct appeal that would have triggered Dilley's constitutional duty to consult regarding the filing of such appeal.

The Fifth Circuit recently affirmed a district court's finding that counsel did not engage in constitutionally deficient performance in failing to consult about the filing of a direct appeal in similar circumstances. *See United States v. Johnson*, 792 Fed. App'x 339 (5th Cir. 2020). The defendant in *Johnson* had pleaded guilty; received a presumptively reasonable, within-guidelines sentence; and never requested her attorney to file an appeal. *Id.* at 340. This situation is nearly identical to Rowe's except that Rowe received a ***below*** guideline sentence.

Finally, contrary to Rowe's arguments in his brief, he is not entitled to any presumption of prejudice. He has not established that he directed Dilley to file an appeal on his behalf, so the straightforward application of presumed prejudice recognized by the Supreme Court in *Garza* does not apply. And, for the same reasons that the Court finds Dilley's failure to consult was not constitutionally deficient, Rowe cannot demonstrate that he would have timely appealed, but for Dilley's failure to consult with him post-sentencing. Importantly, the Fifth Circuit has emphasized that a defendant's testimony (like Rowe's) that he would have appealed if consulted, standing alone, does not establish prejudice. *See id.* (citing *United States v. Bejarano*, 751 F.3d 280, 286 (5th Cir. 2014)). The District Court should therefore deny Rowe's ineffectiveness claim based on a failure to consult regarding the filing of a direct appeal or to file a direct appeal as requested.

## V.  Conclusion and Recommendation

Having considered Rowe's Petition, the response and reply thereto, the testimony of Rowe and Dilley at the hearing, the argument of counsel, and the parties' post-hearing briefing, the undersigned recommends that Petitioner Tremal Rowe's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [#347] be **DENIED** with respect to Rowe's claim

that his attorney was constitutionally deficient in failing to consult with him about the filing of a direct appeal.

### VI.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415,

1428–29 (5th Cir. 1996) (en banc).

    SIGNED this 28th day of October, 2021.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE